IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY KNOTTS,

           Plaintiff,

  vs.                                  No. CIV 09-948 BB/LFG
                                            consolidated with
                                            No. CIV 09-955 WJ/LFG

JOE WILLIAMS,
Secretary of Corrections

           Defendant.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

This is a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Jimmy Knotts ("Knotts"). At the time he filed this action in September 2009, Knotts was incarcerated at the Guadalupe County Correctional Facility ("GCCF") in Santa Rosa, New Mexico. Sometime in October 2009, Knotts was transferred to Western New Mexico Correctional Facility ("WNMCF") in Grants, New Mexico [Doc. 6]. He was released on parole on or about January 16, 2010. [Doc. 18, at 10, and Ex. SS thereto].

Knotts originally filed two separate complaints, alleging in both that his hernia went untreated while he was an inmate at GCCF and at Lea County Detention Center ("LCDC"). The complaints were consolidated [Doc. 13], and the Court granted Knotts's motion to dismiss claims against all named Defendants, and substituted Joe Williams, Secretary of Corrections, as the sole

---

[1] Within fourteen (14) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

Defendant. [Doc. 12 in Civ. 09-948; Doc. 11 in Civ. 09-955]. Defendant Williams was served and filed his Answer [Doc. 16].

On May 28, 2010, the Court ordered Defendant to submit a <u>Martinez</u> report[2] responding to Plaintiff's claims. [Doc. 17]. The <u>Martinez</u> report was filed on July 23, 2010. [Doc. 18]. In it, Defendant argues that Knotts failed to exhaust his administrative remedies prior to bringing suit and, in any event, he was not denied appropriate medical care. Defendant asks that the case be dismissed with prejudice. Knotts did not file a response to the <u>Martinez</u> report, and the time for doing has expired.

For the reasons given below, the Court recommends that summary judgment be granted in favor of Defendant on all of Plaintiff's claims and that this action be dismissed with prejudice.

## **Plaintiff Received Adequate Medical Care**

A. *Chronology of Hernia Treatment*

Defendant attached to the <u>Martinez</u> report the medical records documenting the care Knotts received for his hernia problem between April 30, 2009, the date he arrived at GCCF, and the time he was paroled from WNMCF in January 2010.

The intake record for April 30, 2009 notes the existence of a hernia. [Doc. 18, Ex. C]. Progress Notes dated May 5, 2009 state that Knotts complained of a hernia at the right testicle which was causing pain. The nurse practitioner who examined him on that date reported a large baseball-sized reducible hernia. His medications were renewed and the nurse practitioner requested a lower bunk for Knotts. He was given a return appointment for June 20, 2009. [Doc. 18, Exs. D-F]

On May 11, 2009, Knotts submitted a Request to Staff, complaining that the hernia was

---

[2]Pursuant to <u>Martinez v. Aaron</u>, 570 F.2d 317, 320 (10th Cir. 1978).

getting worse, that the hernia belt was not helping, and that he was having pain in the right testicle because of the pressure. He requested surgery. The response noted that he was scheduled with the provider for May 20, 2009 (apparently an error, as the May 5 record stated his next appointment was on June 20). [Doc. 18, Ex. G].

Knotts submitted a Health Service Request Form ("HSRF") on May 20, 2009. He said that the hernia was painful, that he needed pain medication, and asked about the status of the paperwork for his hernia surgery. Knotts was examined by a nurse on May 22, 2009. The nurse did not know the status of his surgery paperwork but advised him that his medications were renewed and noted that the follow-up appointment for his hernia problem had already been scheduled. [Doc. 18, Ex. H].

On May 29, 2009, Knotts again submitted a HSRF, asking about his hernia surgery. He was seen by a nurse who wrote that Knotts denied any discomfort at that time. It was again noted that he had an appointment scheduled. [Doc. 18, Ex. I].

On June 12, 2009, Knotts submitted another HSRF, asking about the status of his request to see a doctor for his hernia. He was again seen by a nurse. The notes indicate that Knotts was ambulating without difficulty and that he already had an appointment pending. [Doc. 18, Ex. J].

Four days later, on June 16, 2009, Knotts again submitted a HSRF, complaining that his hernia needed to be fixed and "the medical doctor here keeps prolonging my needs of getting it fixed." The nurse noted on June 17 that Knotts had been seen by a medical provider on May 5, 2009 and again on June 14, and that a follow-up appointment was scheduled. [Doc. 18, Ex. K].

Apparently, Knotts's June 20 appointment never happened because of a lockdown. On June 23, 2009, he submitted a HSRF, stating he was told he would be seeing a doctor, but the facility was on lockdown for two days. He again requested to see a doctor about the hernia. [Doc. 18, Ex. L].

Knotts made another request on June 26, 2009, saying he had not yet seen a doctor. Two days later, he submitted another HSRF, stating that his hernia was getting worse and he needed to see someone about it. The nurse who saw him in response to this request noted that Knotts was still complaining of hernia pain and he wanted some stronger pain medication. On examination, Knotts appeared alert and oriented with no signs of pain or distress. A follow-up appointment was made for July 7, 2009. [Doc. 18, Exs. M,N].

Knotts was seen again by a medical provider on July 4, 2009. At this visit, Knotts stated that his hernia belt did not help to keep the hernia in place, so he didn't use it. The provider, whose signature is completely illegible, notes that the hernia is easily reducible and that there are no signs of strangulation (*i.e.*, congestion by reason of constriction or hernial structure, with compromise of blood supply).[3] The notes of this visit are generally not very legible, but something is noted regarding "Dr. Dodd / Mr. Padilla." "Mr. Padilla" may refer to Jimmy Padilla, the nurse practitioner who examined Knotts upon intake and whose signature appears in several places in the record. [Doc. 18, Ex. O].

One of two formal grievances filed by Knotts with respect to his hernia treatment appears to stem from the July 4 visit. In a grievance dated July 21, 2009, with the "date of incident" given as July 4, he states, "I was told that this medical staff doesn't have the authority to authorize any kind of surgery to keep me from possibly dieing [sic] if my hernia gets strangulated. And I know that I only have 10 minutes to get medical attention and it takes 20 minutes to get the staff to come to the door. The only way I'll be happy is if I get my surgery . . . ." [Doc. 18, Ex. A, at 1].

Medical Administrator Kathy Armijo, the staff member who responded to the grievance,

---

[3] Dorland's Illustrated Medical Dictionary 1804 (31st ed. 2007)

wrote on August 12, 2009 that Knotts was seen on a regular basis for his stated medical needs, and that he had an appointment for that day, August 12, to review the status of his hernia. The grievance officer found that Knotts's claim of inadequate medical care was not substantiated and made the recommendation that the grievance was resolved. This recommendation was adopted by the Warden Designee on August 20, 2009. [Id., at 2-3]. Knotts did not pursue this grievance any further, although he had the right to appeal the Warden's decision within seven days; he thus failed to exhaust his administrative remedies with respect to this grievance. [Doc. 18, Exs. A, B (within Ex. A, note particularly "Appeal Process" at Section D, Corrections Department Policy CD-150500)].

On July 9, 2009, Knotts submitted a HSRF, stating "I need something for my hernia and I need it done now not later." He said the hernia kept getting bigger, that it was hard to walk around and he was unable to go to class because of the pain. He was seen by a nurse the next day. She noted she would follow up with the provider. [Doc. 18, Ex. P].

On July 15, 2009, Knotts was seen by nurse practitioner Padilla, who noted Knotts's complaints that his hernia was getting worse and causing changes in his bowel habits. Padilla did not attempt to reduce the hernia. It is unclear what treatment was ordered for the hernia problem, if any, at this time. [Doc. 18, Ex. Q].

On July 29, 2009, Knotts submitted a HSRF, asking to see a medical doctor about his hernia. A nurse noted that Knotts had been seen on July 15 and that he had a follow-up appointment scheduled for August 4, 2009. [Doc. 18, Ex. R].

Dr. Barbara D. Dodd, D.O. signed a form on August 5, 2009, adjusting Knotts's medications. [Doc. 18, Ex. S].

On August 11, 2009, Knotts submitted an Inmate Request Form, stating that his hernia was bothering him and that he wanted surgery. The response to this Request was that Knotts was seen

on August 5 and that he had an appointment to follow up on the hernia. [Doc. 18, Ex. T].

Knotts submitted another HSRF on August 12, 2009, saying he needed to see the doctor "not anyone who can't help me." He said he was in pain because of his hernia and was refused medical treatment. He concluded, "I'm going to write the papers and the news!" In response, a nurse wrote that Knotts was seen by a provider on August 5 and that he had a follow-up appointment on September 7, 2009. [Doc. 18, Ex. U].

Two days later, on August 14, 2009, Knotts submitted another HSRF, stating he was in a lot of pain because of the hernia, that it hurt to walk, that the pain went around to his lower back, and that he wanted surgery "not some lame excuse." In response, a nurse noted that Knotts had an appointment already scheduled. [Doc. 18, Ex. V].

Two days after that, on August 16, 2009, Knotts submitted an Inmate Request Form, stating that he was in a lot of pain, that his hernia was unbearable at times, that he needed surgery and "your nurse practitioner always gives me a line of crap about he can't do anything. That's bull." [Doc. 18, Ex. W].

Knotts was seen by nurse practitioner Padilla on August 18, 2009. They discussed an offsite hernia repair. Knotts was given a prescription for Colace (stool softener) and told to return on August 24. [Doc. 18, Exs. X, Y].

On August 23, 2009, Knotts submitted a Request to Staff, complaining that his grievance was ignored, his hernia was getting worse, and that the medication they gave him was harming his liver. He concluded, "So instead of fixing my hernia they're killing my liver by giving me pain pills. So do I get an operation or a pine box?" The staff member responding to the Request on August 25 noted that Knotts was seen by a provider on that date and was notified of an offsite visit for possible surgical consult on the hernia repair. Progress Notes for an August 24 visit indicated that nurse

6

practitioner Padilla planned to consult an M.D. for possible surgical consult. Progress notes for an August 25 visit again confirmed that Padilla had discussed the case with an M.D. who concurred that Knotts should have an evaluation by a surgeon. [Doc. 18, Exs. Z, AA, BB].

Knotts submitted a HSRF on September 3, 2009, asking when the paperwork was sent for his surgery. He was advised that the paperwork was sent on August 25 and he had a follow-up appointment scheduled for September 16. [Doc. 18, Ex. CC]. He was seen by Dr. Dodd on September 15 or 16, 2009. She noted that the hernia was non-reducible, ordered Tylenol, and made a note which appears to refer to the surgical consult. [Doc. 18, Ex. DD, EE].

Knotts submitted the second of his two formal grievances concerning treatment of his hernia on September 17, 2009. He complained: "This is to all party's involved in the medical department for neglecting my medical needs. This type of behavior is inhumane and uncalled for. And no one is stepping up to the plate to handle this profesionally it is being misdignosed and untreated. Therefor it is torture at its finest." [Doc. 18, Ex. A, at 4 (emphasis and spelling as in original).

On October 1, 2009, Medical Administrator Kathy Armijo responded to the grievance, noting recent medical visits and the fact that Knotts had another scheduled appointment with a specialist for possible surgery. The Grievance Officer reviewed the report and found that Knotts failed to substantiate his claim that the medical department was not giving him proper care and treatment and recommended that the grievance be designated as resolved. The Warden Designee signed off on the grievance as resolved. Again, Knotts failed to appeal this decision and therefore failed to exhaust his administrative remedies with respect to this grievance. [Doc. 18, Ex. A, at 5-6; Ex. B]. In fact, Knotts had already filed his Complaint in this action before the grievance was completely resolved.

On September 20, 2009, Knotts appeared in medical, complaining of hernia pain and requesting a "medical lay-in for a couple of days to get through pain." The lay-in was permitted.

7

[Doc. 18, Ex. FF]. On September 24, 2009, Knotts submitted a HSRF in which he complained that the hernia on the right side was getting bigger and he was now feeling pain on his left side. On September 28, 2009, Knotts was sent off-site to St. Vincents Surgical Associates for a consultation regarding surgery for his hernia. The offsite visit was noted in the response to the HSRF Knotts submitted on September 24, and Knotts was advised not to do any heavy lifting and to alternate medications with rest. Dr. Dodd signed a consultation request for the surgery on September 30, 2009. [Doc. 18, Exs. FF-HH].

Knotts submitted another HSRF on September 30, 2009. He asked how much longer it would be until the surgery and wrote, "The nurses think that because the order's in that its resolved and until I have a surgery it'll never be resolved." [Doc. 18, Ex. II].

Knotts visited medical on October 1, 2009, asking for medication for increased pain at the hernia site. Dr. Dodd was called; she ordered meds. On October 21, 2009, a Progress Note indicated that surgery was scheduled for October 27. [Doc. 18, Exs. JJ, KK]. On October 22, Knotts submitted another HSRF, asking about the status of his hernia surgery. He was informed about the upcoming surgery. [Doc. 18, Ex. KK, at 2].

Medical records from St. Vincent Regional Medical Center, Santa Fe Surgical Associates, indicate that Knotts's hernia surgery was performed on October 27, 2009 by Dr. Ali. [Doc. 18, Ex. KK, at 3-6]. Knotts was released from the hospital on that date and was seen in medical (presumably at WNMCF) for problems with his dressing. The dressing was secured and reinforced. Knotts was advised to avoid heavy lifting. He was reminded that medication was available to him and that he should return to the clinic or infirmary if he noticed any signs of infection or bloody discharge from the surgical site. He was prescribed Vicodin and Colace. [Doc. 18, Exs. LL, NN].

On or about November 3, 2009, Knotts submitted a HSRF asking to see the doctor about his

surgical stitches.  He said his right testicle was swollen and the surgical site was bleeding slightly. On examination, the wound was found to be bleeding, and Knotts had bruising in the pubic area and pain and swelling in the right testicle.  The examining nurse noted that Knotts would be referred to the provider and that a follow-up would be scheduled with the surgeon.  He was prescribed an antibiotic.  [Doc. 18, Ex. MM, NN].  A Progress Note of November 5, 2009 states that Knotts was scheduled to be seen by the surgeon, Dr. Ali, on November 16, 2009.  [Doc. 18, Ex. OO, at 1].

At the November 16 visit, Dr. Ali noted that Knotts was experiencing fluid collection in the right scrotum, replacing the hernia contents.  There was no sign of infection, no pain, and the testicle was viable.  He advised that the scrotum should be monitored, and he planned no intervention at that time.  Knotts was told to return if the pain worsens of if he was concerned about recurrence of the hernia.  [Doc. 18, Ex. OO, at 2-3].

Knotts was seen by a nurse practitioner at WNMCF on November 25, 2009.  He reported that his testicles were "down to normal size."  The practitioner noted that the swelling was greatly decreased, and there was no redness or pain.  The hernia repair was reported to be healing.  Knotts was advised to return to the clinic in mid-December.  [Doc. 18, Ex. PP].

On December 16, 2009, Knotts seemed to be feeling fine, as he submitted a HSRF, demanding to know why he had not been medically cleared to work.  Knotts was examined the next day.  He stated he "feels fine" about six weeks out from the hernia repair.  The wound was well healed, and the swelling in the scrotum had gone down.  He was instructed to keep his lab and clinic appointment scheduled for February 2010, "if still here."  Knotts was cleared for work.  [Doc. 18, Exs. QQ, RR].  Knotts was released from incarceration on or about January 19, 2010.  [Doc. 18, Ex. SS].

9

B.  *The Record Demonstrates No Eighth Amendment Violation*

The above chronology reveals that Knotts was quite vocal about his hernia problem and assertive about demanding treatment, sometimes in quite colorful language. From the time he arrived at GCCF in April 2009 until his release from WNMCF somewhat over eight months later, he filed approximately 22 requests and two grievances related to his hernia condition.

There is no doubt that he suffered pain due to the hernia. However, the hernia was reducible when he first arrived at GCCF, and Knotts's aggressive insistence that he needed surgery at that time does not establish that he did, in fact, need immediate surgery, nor does it indicate that he was denied or delayed treatment in violation of the Eighth Amendment.

In Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), the Supreme Court held that, under certain conditions, delay or denial of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment.

An assertion of deliberate indifference with respect to medical care has two components, one objective and one subjective. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To escape summary judgment, the plaintiff must make a two-part showing that genuine issues of fact exist as to whether: (1) the medical need was sufficiently serious, and whether (2) the defendants acted with a culpable state of mind in that they knew of the serious medical need and were deliberately indifferent to it. Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993).

A "serious" medical need is generally seen as one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem or could result in a lifelong handicap or a permanent loss. A delay in medical treatment does not violate a prisoner's constitutional rights unless the plaintiff can show that the delay resulted in substantial harm. Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993). With regard to the subjective

component, allegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis are not sufficient to establish the requisite culpable state of mind. Handy v. Price, *supra*, at 1067. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, *supra*, 429 U.S. at 106.

In the present case, Knotts has not shown that the medical care he received during his incarceration was even negligent, much less that it met the exacting standard of the Eighth Amendment, which "prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain . . . or are grossly disproportionate to the severity of the crime," Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (internal punctuation omitted), or "offend 'evolving standards of decency.'" Estelle v. Gamble, *supra*, at 106.

Assuming, without deciding, that Knotts's hernia condition was "serious" for purposes of the Eighth Amendment analysis, there has been no showing whatsoever that anyone, much less the one named Defendant in this case, acted with deliberate indifference to his medical needs.

Defendant included with his Martinez report the affidavit of Patrick Arnold, M.D., Regional Medical Director for Correctional Medical Services, Inc. ("CMS"). Dr. Arnold reviewed the medical records and stated that Knotts's hernia condition was never, at any time pertinent to the Complaint, an emergency situation. He stated further that CMS has no specific written guidelines for hernia care; rather, care is given on a case-by-case basis at the discretion of the treating physician. Dr. Arnold noted that Knotts was given a hernia belt, stool softeners and laxatives, and hernia reduction when applicable, all of which is in keeping with the standard of care for treating an inguinal hernia such as Knotts had.

In addition, Dr. Arnold stated that when a hernia begins to interfere with a patient's daily activities, surgical repair is considered and implemented when appropriate. This was done in

Knotts's case. It is Dr. Arnold's opinion that the manner in which the medical staff treated Knotts's hernia was in keeping with the recognized standard of care in correctional medicine. As noted above, Knotts did not file a response to Defendant's Martinez report. He presents no evidence, other than his own statements, to establish a deliberate indifference to his serious medical needs.

The fact that Knotts disagreed with the proposed course of treatment or had a different opinion as to what needed to be done is not controlling. A medical professional's choice of one treatment option from an array of possibilities is not evidence of unreasonable care. Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), *citing* Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) ("we disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment [in a prison setting]. Along with all other aspects of health care, this remains a question of sound professional judgment").

In addition, Knotts fails to show, or even allege, any personal involvement by Secretary of Corrections Joe Williams, the only named Defendant in this case, with respect to the medical care Knotts received while he was incarcerated.

> [W]hen a plaintiff sues an official under Bivens or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010), *citing* Ashcroft v. Iqbal, – U.S. – , 129 S. Ct. 1937, 1949 (2009).

Summary judgment in favor of Defendant is therefore appropriate on the merits of Knotts's claims.

**Exhaustion of Remedies**

As noted above, Knotts submitted numerous HSRFs and Requests to Staff regarding his hernia condition. However, he submitted only two grievances, on July 21, 2009 and September 17,

2009. Both grievances were investigated and resolved; in both cases, Knotts was found to have received proper care and treatment. Knotts did not avail himself of the opportunity to appeal these rulings, and he therefore failed to exhaust his administrative remedies. [Doc. 18, Exs A, B].

The Prison Litigation Reform Act ("PLRA") provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  As a general rule, "42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies as a precondition to bringing litigation, and requires dismissal [without prejudice] where a litigant has failed to complete such exhaustion." Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1140-41 (10th Cir. 2005) (internal punctuation and citations omitted). However, "[u]nder certain circumstances, a district court may, notwithstanding failure to exhaust, proceed to the merits of the claim and dismiss with prejudice if it concludes a party would be unsuccessful even absent the exhaustion issue." Id., at 1139.

In the present case, it is apparent that Knotts's claims would be unsuccessful, even if he had exhausted his remedies. He was clearly not subjected to cruel and unusual punishment; indeed, Defendant submitted evidence that the medical care Knotts received while incarcerated was in keeping with the standard of care. Knotts has provided nothing to refute that evidence. The Court therefore recommends that this action be dismissed with prejudice.

### Recommended Disposition

That Plaintiff's Complaint be dismissed and this action be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge